* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to re-hear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms and adopts *Page 2 
the Amended Opinion and Award of the Deputy Commissioner, with some modifications, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The date of the injury at issue in this case was April 7, 2006.
2. Liberty Mutual Insurance Company was the workers' compensation insurance carrier for Alpha Construction Company at all times relevant to these proceedings.
3. Travelers Indemnity Company was the workers' compensation insurance carrier for Dameron Drywall, Inc. at all times relevant to these proceedings.
4. The parties were subject to and bound by the North Carolina Workers' Compensation Act at all times relevant to these proceedings, and the alleged employers, Alpha Construction Company and Dameron Drywall, Inc., retained the requisite number of employees to be bound under the provisions of the North Carolina Workers' Compensation Act.
5. At all times relevant to these proceedings, Plaintiff's average weekly wage was $400.00, with a compensation rate of $266.68 (the parties entered into this stipulation at the hearing before the Deputy Commissioner).
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Exhibit one (1) — Executed Pre-Trial Agreement;
 b. Exhibit two (2) — List of outstanding medical expenses;
 c.Exhibit three (3) — Industrial Commission forms and filings; *Page 3 
 d.Exhibit four (4) — The parties' initial written discovery responses;
 e.Exhibit four A (4A) — Supplemental written discovery responses;
 f.Exhibit four B (4B) — Documents produced by Dameron Drywall, Inc.;
 g.Exhibit five (5) — Medical bills;
 h.Exhibit six (6) — Plaintiff's medical records.
 * * * * * * * * * * * ISSUES
1. Whether Plaintiff sustained a compensable injury by accident on April 7, 2006?
2. Whether Dameron Drywall, Inc. and Travelers Indemnity Company (hereinafter referred to as the "Dameron/Travelers Defendants") are liable for workers' compensation benefits in this claim, by operation of N.C. Gen. Stat. § 97-19?
3. Whether Alpha Construction Company and Dameron Drywall, Inc. jointly employed Plaintiff on April 7, 2006?
4. If Alpha Construction Company and Dameron Drywall, Inc. jointly employed Plaintiff on April 7, 2006, whether the Dameron/Travelers Defendants are nonetheless relieved of liability by operation of N.C. Gen. Stat. § 97-51?
5. To what compensation is Plaintiff entitled, and from whom?
6. Whether any parties are entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
7. Whether Plaintiff is entitled to the remaining half of the accrued and outstanding benefits, pending the outcome of this appeal, pursuant to N.C. Gen. Stat. § 86.1?
 * * * * * * * * * * * CONSENT ORDER *Page 4 
On November 27, 2007, Deputy Commissioner Robert J. Harris executed a Consent Order, entered into between Plaintiff and the Alpha/Liberty Defendants. The salient points of said Consent Order are summarized immediately below:
1. The Alpha/Liberty Defendants admit that on April 7, 2006, an employer-employee relationship existed between Alpha Construction Company and Plaintiff.
2. After a full investigation of Plaintiff's claim, as well as the completion of the hearing before the Deputy Commissioner and the depositions of the lay witnesses, listed above, the Alpha/Liberty Defendants concede that Plaintiff sustained a compensable injury to his right foot/ankle on April 7, 2006 while in the course and scope of his employment with Alpha Construction Company.
3. The Alpha/Liberty Defendants initiated weekly temporary total disability payments in the amount of $133.33 per week to Plaintiff, starting from the April 7, 2006 work injury, and to continue until further Order of the North Carolina Industrial Commission. The temporary total disability payments by the Alpha/Liberty Defendants represent one-half (1/2) of the total indemnity compensation Plaintiff is claiming in this claim. If the Alpha/Liberty Defendants are found to be entirely responsible for the compensation owed to Plaintiff in this claim, then the Alpha/Liberty Defendants will immediately provide all compensation owed to Plaintiff.
4. The Alpha/Liberty Defendants also began paying for medical treatment related to Plaintiff's right foot/ankle injury. Further, the Alpha/Liberty Defendants took over the direction of Plaintiff's medical treatment. The Alpha/Liberty Defendants reserved the right to seek recovery in full from the Dameron/Travelers Defendants, should joint liability be found. *Page 5 
5. With regard to any presumption of ongoing disability Plaintiff may have, the Consent Order is to be given the same consideration as would a Form 60.
 * * * * * * * * * * *
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is currently 21 years old, and dropped out of school in the ninth (9th) grade. His employment history includes work in factories, convenience stores, and construction labor.
2. In or about April of 2006, Dameron Drywall, Inc. was a construction subcontractor providing framing, drywall hanging, and finishing for the Blowing Rock Arts Center project in Blowing Rock, North Carolina (hereinafter referred to as the "Blowing Rock job"). Dameron Drywall, Inc. subcontracted the labor portion of the job to Alpha Construction Company, among others.
3. Prior to April 7, 2006, Dameron Drywall, Inc. obtained a valid certificate of workers' compensation insurance coverage from Alpha Construction Company. Alpha Construction Company agreed that it would provide workers' compensation insurance coverage for its workers, and Dameron Drywall, Inc. understood that Alpha Construction Company was providing such coverage in full.
4. Dameron Drywall, Inc.'s foreman on the Blowing Rock job, Mr. Geoffrey Gordon Westphal, referred Plaintiff to Alpha Construction Company for possible employment with Alpha Construction Company. As a result, Alpha Construction Company hired Plaintiff to work on the Blowing Rock job. *Page 6 
5. Plaintiff never went to Dameron Drywall, Inc.'s company office, and he never met its owner, Mr. Charles Leonard Dameron. Plaintiff did not fill out an application for employment with Dameron Drywall, Inc., nor did he receive a letter of employment from Dameron Drywall, Inc. No one with Dameron Drywall, Inc. ever told Plaintiff he was an employee of Defendant Dameron Drywall, Inc.
6. Dameron Drywall, Inc. paid Alpha Construction Company $14.00 per hour for each man-hour worked by the employees of Alpha Construction Company, including Plaintiff. Defendant Alpha Construction Company then paid its employees $10.00 per hour. In Plaintiff's case, Alpha Construction Company gave Plaintiff's pay to Mr. Westphal, who then skimmed off $1.00 per hour, which he pocketed, and then paid Plaintiff $9.00 per hour. Dameron Drywall, Inc. was not aware of, nor did they authorize, Mr. Westphal to take this $1.00 per hour from the funds designated for Plaintiff's pay. The Full Commission finds as fact that Plaintiff was an employee of Alpha Construction Company.
7. On April 7, 2006, Plaintiff was working as a construction laborer on the Blowing Rock job. At about 11:30 a.m., Plaintiff was climbing up some scaffolding to hand up some insulation material to a co-worker when Plaintiff lost his grip on the scaffolding and fell from a significant height to the concrete below, landing on his feet and injuring his right foot/ankle.
8. Prior to this fall, Plaintiff had been working at the Blowing Rock job for about three and a half (3 1/2) hours that morning, and was not limping or favoring his right foot/ankle during that time.
9. The Dameron/Travelers Defendants contended that Plaintiff actually injured his right foot/ankle in a dirt bike accident the night before the April 7, 2006 fall at work; however, *Page 7 
the Full Commission finds that there is no credible, competent, or admissible evidence in the record to support this contention.
10. On April 7, 2006, one of Plaintiff's co-workers took him to the emergency department at Johnson County Health Center in Johnson City, Tennessee, where he presented with pain in his right leg and in his right ankle. Radiographs of the right leg and the right ankle indicated that an acute talar fracture could not be excluded. Plaintiff's discharge instructions directed him to report to Johnson City Medical Center for a computed tomography (C.T.) scan, and to follow up with Watauga Orthopedics, both of which are also located in Johnson City, Tennessee.
11. The April 7, 2006 C.T. scan of Plaintiff's right lower leg revealed a distracted, comminuted posterior talus fracture, with fractures extending into the posterior aspect of the tibio-talar joint and the posterior sub-talar joint, a non-displaced medial navicular fracture communicating with the talo-navicular joint, and no gross evidence of tendon injury or entrapment.
12. On April 10, 2006, Plaintiff presented to the emergency department at Watauga Medical Center in Boone, North Carolina with complaints of pain in his right foot. At that time, Plaintiff was having difficulty getting an appointment with Watauga Orthopedics in Johnson City, Tennessee.
13. On April 11, 2006, Plaintiff presented to the emergency department at Frye Regional Medical Center in Hickory, North Carolina with complaints of severe pain in his right leg and ankle. There, he saw Dr. William Michael Geideman, an orthopaedist specializing in foot and ankle surgery. Dr. Geideman recommended another C.T. scan, this time with higher resolution, in order to evaluate Plaintiff's injury for possible surgical intervention. The C.T. scan *Page 8 
revealed a comminuted talar body fracture with a large portion of the tibio-talar articular cartilage and bone retropulsed posteriorly, laying up against the flexor hallucis longus tendon.
14. Dr. Geideman recommended that Plaintiff undergo an open reduction and internal fixation of the talar body fracture, which Dr. Geideman performed on April 12, 2006. Dr. Geideman discharged Plaintiff home the next day with instructions of strict non-weight bearing on his right lower leg, and to follow-up in two (2) weeks with Dr. Geideman.
15. On April 27, 2006, Plaintiff followed up with Dr. Geideman. Plaintiff reported some continued pain and swelling. Dr. Geideman fitted Plaintiff with a short leg, non-weight bearing cast, and instructed him to return in a month for cast removal, repeat radiographs, and initiation of weight-bearing in a sidekick boot.
16. Plaintiff did not return to Dr. Geideman thereafter due to the denial of his workers' compensation claim, along with the fact that he had no health insurance, and he was otherwise unable to afford further treatment.
17. Plaintiff finally was able to return to Dr. Geideman on August 15, 2007, pursuant to Deputy Commissioner Robert J. Harris's post-hearing Order that the Alpha/Liberty Defendants pay for the evaluation. Dr. Geideman's examination that day revealed that Plaintiff had tenderness about the postero-lateral, sub-talar joint, as well as limited range of motion with stiffness in the sub-talar joint. Radiographs revealed a good fixation and healing of the talar fracture, but a slight irregularity at the posterior portion of the talar body as it articulates with the calcaneus. Overall, Dr. Geideman's impression was that the talar body fracture healed.
18. Dr. Geideman opined that Plaintiff's right foot/ankle injury was consistent with a fall from a height with a landing on concrete, and that it was not consistent with a dirt bike accident. *Page 9 
19. Further, Dr. Geideman opined that Plaintiff should have been on crutches for at least two (2) to three (3) months following the April 12, 2006 surgery, with a slow progression thereafter to full weight-bearing. Moreover, Dr. Geideman stated that with proper follow-up treatment and physical therapy, it would have been his preference that Plaintiff take at least six (6) months to a year before Plaintiff would have been able to return to heavy-duty work.
20. Although Dr. Geideman would have expected that, at some point in the past one and one-half (1 1/2) years, Plaintiff could have resumed normal activities, Dr. Geideman was not comfortable with assigning work restrictions based upon his August 15, 2007 examination of Plaintiff. Rather, he believed that Plaintiff needed physical therapy before his abilities could be accurately determined. As of August 15, 2007, Dr. Geideman believed that Plaintiff had a 20 to 40 percent permanent partial impairment in his right ankle, but he did not believe that Plaintiff was then at maximum medical improvement, due to his need for further physical therapy.
21. As of July 25, 2007, the date of the hearing before the Deputy Commissioner, Plaintiff could walk on his right foot for up to two (2) hours, and he continued to have pain, popping, and cracking in his right ankle. As of Plaintiff's June 16, 2008 appointment with Dr. Geideman, Plaintiff was continuing to undergo physical therapy, was in need of at least four (4) more weeks of physical therapy, and was not working.
22. Plaintiff was and remains disabled as a result of his April 7, 2006 compensable right foot/ankle injury. Although Plaintiff may have been physically capable of work at some limited or light-duty level during the period since his April 7, 2006 work injury, it would have been, and still would be, futile, because of Plaintiff's limited education and work experience, for him to seek employment that comported with his limited physical ability. *Page 10 
23. The treatment that Plaintiff received at the various medical facilities discussed, above, as well as the treatment Plaintiff received with and at the direction of Dr. Geideman for his April 7, 2006 right foot/ankle injury, was all reasonably required to effect a cure and/or to provide relief for Plaintiff. Further treatment with and at the direction of Dr. Geideman for his right foot/ankle injury is reasonably required to effect a cure, to provide relief, and/or to lessen the period of Plaintiff's disability due to his April 7, 2006 work injury.
24. None of the Defendants defended this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Consent Order, and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his right foot/ankle on April 7, 2006, which arose out of and was in the course and scope of his employment with Alpha Construction Company. N.C. Gen. Stat. § 97-2(6) (2007).
2. Because Dameron Drywall, Inc. obtained a valid certificate of workers' compensation insurance coverage from Alpha Construction Company before April 7, 2006, the Dameron/Travelers Defendants are not liable for workers' compensation benefits in this claim. N.C. Gen. Stat. § 97-19 (2007).
3. Alpha Construction Company and Dameron Drywall, Inc. did not jointly employ Plaintiff on April 7, 2006, for purposes of the North Carolina Workers' Compensation Act. Even if he were to have been so jointly employed, the Dameron/Travelers Defendants would be *Page 11 
shielded from liability for workers' compensation benefits in this claim by operation of N.C. Gen. Stat. § 97-51, because Alpha Construction Company agreed to provide full workers' compensation insurance coverage to its employees, of which Plaintiff was one. N.C. Gen. Stat. § 97-51
(2007).
4. Alpha Construction Company solely employed Plaintiff, and Dameron Drywall, Inc. did not employ Plaintiff. As such, the Alpha/Liberty Defendants are not entitled to any indemnification in this claim from the Dameron/Travelers Defendants.
5. Plaintiff was and remains disabled as a result of his April 7, 2006 compensable right foot/ankle injury. Although Plaintiff may have been physically capable of work at some limited or light-duty level during the period since his April 7, 2006 work injury, it would have been, and still would be, futile, because of Plaintiff's limited education and work experience, for him to seek employment that comported with his limited physical ability. As such, Plaintiff is entitled to have the Alpha/Liberty Defendants pay to him temporary total disability benefits at his full compensation rate for the period from April 7, 2006 through the present, and ongoing. N.C. Gen. Stat. § 97-29 (2007); Russell v.Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Plaintiff is also entitled to have the Alpha/Liberty Defendants pay for all medical treatment that Plaintiff received for his April 7, 2006 compensable right ankle/foot injury with or at the direction of Johnson County Health Center, Johnson City Medical Center, Watauga Medical Center, Frye Regional Medical Center, and/or Dr. William Michael Geideman, including, but not limited to, diagnostic testing, surgery, physical therapy, office visits, prescription medications, assistive devices, referrals to other health care providers, and mileage to and from medical appointments. N.C. Gen. Stat. §§ 97-2(19) and 97-25 (2007). *Page 12 
7. Plaintiff is also entitled to have the Alpha/Liberty Defendants authorize and pay for future treatment for Plaintiff's April 7, 2006 compensable right ankle/foot injury with or at the direction of Dr. Geideman, including, but not limited to, diagnostic testing, surgery, physical therapy, office visits, prescription medications, assistive devices, referrals to other health care providers, and mileage to and from medical appointments. N.C. Gen. Stat. §§ 97-2(19) and 97-25 (2007).
8. None of the Defendants defended this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified. N.C. Gen. Stat. § 97-88.1 (2007).
9. Since the compensability of this claim is not an issue before the Full Commission for determination, based upon the fact that no party raised it as an issue to be appealed, and since Plaintiff received and is currently receiving only one-half (1/2) of his temporary total disability compensation, Plaintiff is entitled to receive the other one-half (1/2) of the accrued and ongoing indemnity benefits owed to him pending the outcome of any appeal of this Opinion and Award. N.C. Gen. Stat. § 97-86.1 (2007).
10. Furthermore, since one-half (1/2) of Plaintiff's temporary total disability compensation remains outstanding from the January 17, 2008 Amended Opinion and Award of Deputy Commissioner Robert J. Harris, and compensability of the claim is no longer disputed, a 10 percent penalty should be assessed against the unpaid one-half (1/2) of Plaintiff's temporary total disability compensation, to be paid by the Alpha/Liberty Defendants, plus interest from the date of the Deputy Commissioner's Opinion and Award. N.C. Gen. Stat. §§ 97-18(g); 97-86.2 (2007).
 * * * * * * * * * * * *Page 13 
Based upon the foregoing Stipulations, Consent Order, Findings of Fact, and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim against the Dameron/Travelers Defendants, and the Alpha/Liberty Defendant's claim for indemnification from the Dameron/Travelers Defendants, are hereby DENIED, pursuant to N.C. Gen. Stat. §§ 97-19 and 97-51 (2007).
2. Subject to the attorney's fee provision below, the Alpha/Liberty Defendants shall pay to Plaintiff, in a lump sum, accrued temporary total disability benefits in the amount of $266.68 per week from April 7, 2006 through the present, continuing until further Order of the North Carolina Industrial Commission; however, the Alpha/Liberty Defendants shall receive full credit for the temporary total disability payments already made pursuant to the Consent Order, above discussed.
3. Also subject to the attorney's fee provision below, the Alpha/Liberty Defendants shall pay Plaintiff ongoing weekly temporary total disability benefits in the amount of $266.68 per week until Plaintiff returns to work, or further Order of the North Carolina Industrial Commission.
4. As to the attorney's fee for Plaintiff's counsel, the Alpha/Liberty Defendants shall pay directly to Michael P. Kepley, Plaintiff's current counsel of record, the following: 25 percent of the accrued temporary total disability compensation amount owed to Plaintiff before application of the credit. The Alpha/Liberty Defendants shall also make every fourth (4th) on-going temporary total disability check due payable directly to Michael P. Kepley, Plaintiff's current counsel of record. Any fee dispute remaining as between Michael P. Kepley, Plaintiff's counsel of record, and Cameron M. Ferguson, Plaintiff's former counsel, is a matter for which *Page 14 
the North Carolina Industrial Commission lacks the jurisdiction to resolve, and thus, a matter which said attorneys should resolve in some other forum, if need be.
5. The Alpha/Liberty Defendants shall pay for all medical treatment that Plaintiff received or shall receive in the future, including treatment for his compensable right ankle/foot injury with or at the direction of Johnson County Health Center, Johnson City Medical Center, Watauga Medical Center, Frye Regional Medical Center, and/or Dr. William Michael Geideman, including, but not limited to, diagnostic testing, surgery, physical therapy, office visits, prescription medications, assistive devices, referrals to other health care providers, and mileage to and from medical appointments. If Plaintiff and/or any third-party payor already paid for any such treatment, then the Alpha/ Liberty Defendants shall reimburse such payor in full, according to the North Carolina Industrial Commission fee schedule.
6. Dr. Geideman is hereby designated as Plaintiff's authorized treating physician. Subject to the limitations period set out in N.C. Gen. Stat. § 97-25.1, the Alpha/Liberty Defendants shall authorize and pay for the treatment for Plaintiff's April 7, 2006 compensable right ankle/foot injury that Dr. Geideman recommends, including, but not limited to, diagnostic testing, surgery, physical therapy, office visits, prescription medications, assistive devices, referrals to other health care providers, and mileage to and from medical appointments.
7. Plaintiff's request for attorney's fees under N.C. Gen. Stat. § 97-88.1 is DENIED.
8. The Alpha/Liberty Defendants shall pay to Plaintiff the other one-half (1/2) of the accrued and ongoing temporary total disability compensation owed to him pending the outcome of any appeal from this Opinion and Award, pursuant to N.C. Gen. Stat. § 97-86.1.
9. The Alpha/Liberty Defendants shall pay interest on the unpaid one-half (1/2) of Plaintiff's temporary total disability compensation from the date of the hearing before the *Page 15 
Deputy Commissioner, at the legal rate of eight (8) percent, pursuant to N.C. Gen. Stat. § 97-86.2 (2007).
10. The Alpha/Liberty Defendants shall pay a 10 percent penalty on the unpaid one-half (1/2) of Plaintiff's temporary total disability compensation. N.C. Gen. Stat. § 97-18(g) (2007).
11. The Alpha/Liberty Defendants shall pay the costs of this proceeding. As part of said costs, if they have not done so already, the Alpha/Liberty Defendants shall pay a deposition expert witness fee to Dr. Geideman in the amount of $765.00, or the amount actually billed, whichever is less.
This the ___ day of August 2008.
 S/_____________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/_____________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1